[No. 1280.]

THE DENVER, TEXAS & FORT WORTH RAILROAD CO. v. THE PULASKI IRRIGATING DITCH CO.

1. PRACTICE—EVIDENCE.

Where by stipulation of parties a cause was submitted upon one issue and it was agreed that the jury should consider only that single issue, it was not error for the court to exclude evidence not pertinent and material to that issue, though such evidence was legitimate and material testimony in the case as it stood without the stipulation.

2. INSTRUCTIONS—VIEW OF LOCUS IN QUO.

Where a jury was permitted to view the premises, damage to which was in issue, and the court instructed the jury that they might take into consideration what they had observed together with the testimony introduced in the case in making up their verdict, such instruction while not approved was harmless error where the other evidence in the case was sufficient to sustain the verdict, without the view of the premises.

3. APPELLATE PRACTICE—INSTRUCTIONS—EXCEPTIONS.

An objection and exception to instructions which fail to call the attention of the trial court to the error complained of are not available to cause a review of the instructions on appeal.

*Appeal from the District Court of Las Animas County.*

Mr. HENRY W. HOBSON, Mr. ALBERT E. PATTISON and Mr. E. E. WHITTED, for plaintiff in error.

Mr. J. M. JOHN and MESSRS. ABBOTT & ABBOTT, for defendant in error.

BISSELL J., delivered the opinion of the court.

After the Pulaski Irrigating Ditch was constructed in 1886, the Denver, Texas & Fort Worth Railroad Company laid out its line which crossed the ditch at various points along its general direction. In crossing the ditch the railroad company built divers bridges. The construction of the bridges in their permanent form offered obstruction to the free flow of the water which caused the deposit of sediment and in other ways the bridges occasioned some general damage to the ditch. The ditch company brought suit against the railroad corporation to recover damages for these alleged wrongs, and in some particulars sought injunctive relief. The case was several times tried and invariably resulted in a verdict adverse to the railroad company. One of these judgments was reversed by the supreme court, and the last trial in which the ditch company obtained a verdict has come here on error. These numerous trials and adverse judgments render it to the interest not only of the litigants, but of the general public, that there should be an end to the litigation. The importance and controlling force of this principle has been often recognized. Guided by it, we are not only at liberty, but are required to weigh the objections urged against the validity of the judgment with great care, resolve the matters of uncertainty against the judgment defendant, and uphold the verdict, unless we are thoroughly satisfied that some error was committed by the trial court, which as a matter of right entitles the railroad company to a new trial. Proceeding along these lines, we will state the case and formulate our conclusions.

The stipulation made between the counsel at the time of the last trial eliminated all questions but one from the consideration of the jury. The complaint contained two counts. The second one was dismissed, and it was agreed that the cause should proceed only on the first count for permanent damages ; that the road should remain as located, and the rights which might be established by the judgment should forever remain established. This is not the exact form of the stipulation, but it is its legal effect. The importance of this suggestion will appear when we come to the discussion of the first question presented by counsel. Acting under the stipulation both parties introduced evidence directed solely and entirely to the proposition whether the railroad as constructed, the bridges as built operated permanently to injure the canal, occasioned additional labor to care for and maintain it, and possibly compelled the parties to expend what would otherwise have been unnecessary labor in protecting its banks, and preserving it in its integrity. Various witnesses were produced on both sides to this proposition, and the question was ultimately submitted to the jury, whether the ditch had been in any wise, and to what extent, permanently damaged. Prior to the introduction of the testimony, and on the request of the railroad company, the jury was sent out to view the ditch and points involved. Whether it was a case wherein the court in its discretion could rightly direct the view is entirely removed by this request. The ditch company who was plaintiff, did not complain of it, the railroad company asked for it, and the order was therefore properly made. There is a little evidence in the case from which we infer, and as to which we are also advised by the contention of counsel, that this ditch which took its water from the Las Animas river, was junior in right and time to many other ditches taken from the same source. There was some attempt to offer evidence to the point that by reason of prior appropriations this Pulaski ditch could only receive a supply at times of high water, and by the local decree fixing the priorities this ditch was of a late date and junior to

many others. At the outset the railroad company offered this decree. The proof was then rejected though as we discover from the record, the decree was ultimately received in evidence. Some questions however were put to witnesses directed to the establishment of the date of the Pulaski ditch appropriation, which were excluded by the court. The rulings of the court on this matter are made the subject of argument and assigned as error. Without considering the legitimacy of this testimony, as the case might have stood had it been tried without the stipulation referred to, we are clearly of the opinion that it was wholly immaterial in the light of the only issue tried under the agreement of the parties. As we view the stipulation the whole question of title and priority was waived. This is evident from the fact that issue was raised by the answer respecting title and priority, and the proof lacks evidence which would have been absolutely indispensable to the maintenance of the plaintiff's case but for the stipulation. The whole case was tried on the theory that the only matter in issue was as to the permanent damage and the extent of it. This was the only matter towards which the testimony was directed, the only thing which was submitted to the jury, and the sole matter on which they based their verdict. Under these circumstances we think the plaintiff in error is concluded from insisting on the exceptions which he saved to the ruling of the court on these questions, and cannot be here heard to insist that the court erred in its rulings in respect to these matters. When parties go into court and try a case on one hypothesis, submit a cause to the jury on that single basis, direct their testimony to one point, and one point only, and agree that that shall be the only thing which shall be considered or determined by the jury, they cannot even though they may have offered other testimony which under other circumstances would have been both pertinent and legitimate, insist that the court erred in excluding it, so long as it was not pertinent or material to the question which they had agreed was the only question in the case. As we look at it, this disposes of the errors assigned

on the rulings of the court with respect to the admission of testimony and leaves but one other question to be disposed of in order to fully determine this appeal.

That question is based on an instruction to the jury with reference to the view which the jury had of the *locus in quo*, and what might be called the subject-matter of the controversy. Of course it is not insisted that the court erred in sending the jury out to look at the premises, but only that the court permitted the jury to unduly use what information they may have obtained by their inspection. Generally, the court told the jury they must find plaintiff's damages from the preponderance of the evidence introduced, together with their observations of the property, and as it was qualified in the last part of the instruction the court substantially told them that they had a right to take into consideration what they had observed, and consider it as they considered the testimony of the witnesses produced before them. As will be apparent to any one who has had occasion to examine the question the instruction opens up a very considerable field for discussion. The authorities are not in unison on the question, and while the matter has been the subject of considerable judicial consideration, it may be said there are three different lines of authorities. According to one view, what the jury may observe when sent out to view the premises in dispute, can under no circumstances become evidence, nor are the jury entitled to take it into consideration otherwise than as affording them means to better understand and apply the testimony which has been produced. According to another, what may perhaps be metaphorically termed "mute" evidence may be used by the jury in reaching their conclusion, like any other evidence offered, and under some circumstances it may even be taken as determinative of the dispute to the exclusion of the parol testimony. The middle line permits the jury to use their observations as evidence, but not as preponderating, and in order to uphold the verdict as supported by testimony, the conclusions of the jury must measurably at least be supported by what actually appears in the record.

According to some of the cases, it is absolute error to tell the jury that they can regard what they have seen as evidence, and that the only legitimate instruction which may be given is one to the effect that they can use what they have seen, to acquire an understanding of what has been produced, but may not regard it in the line of evidence to overcome the direct testimony of the witnesses. It is possible that what we may suggest concerning the matter will be regarded as *obiter* because the objection will be disposed of practically on another ground. The suggestions, however, do not strictly come within the purview of this common criticism because the question is directly presented and discussed, and the court can rightly consider it. We are very frank to say we do not appreciate the refined distinction which is drawn by some of the authorities wherein it is held that the jury are not at liberty to regard what they have seen as evidence in the case, but must utterly reject it otherwise than as an aid to the understanding of the testimony offered. The folly of it is apparent from the constitution of the human mind and the well understood processes by which juries arrive at conclusions. Many illustrations which forcibly express these ideas may be found in the cases. If a dozen witnesses should testify that there was no window on the north side of the house from which one man had sworn that he viewed the affray, and the jurors on view should see the window, all lawyers would know that it would be futile on the argument to insist to the jury that their verdict must be based on the nonexistence of the window, since the point had been sustained by a vast preponderance in the number of witnesses. In this mining community lawyers who have had to do with litigations over lode claims where the controversy respects the existence of an apex or the continuity of a vein will understand that if a jury descended to inspect a mine, and the jury had on it a half dozen miners, it would be folly to expect a verdict if those workmen from their inspection concluded that the crevice was a vein, and that it was or was not continuous. If the miners believed from their inspection that the crevice was a

thing that they would follow, though a hundred men might swear they could not obtain an assay from it, and a hundred professional witnesses might swear that the vein was not continuous, yet, if these miners believed that the stained seam was a thing which they would have followed in the development of the property had they owned it, their verdict would be that it was a vein and was continuous, providing the subsequent development showed that at the end of it there was a large body of valuable ore. We are, therefore, quite unable to appreciate the reasoning by which courts hold that a charge of this description is necessarily erroneous, and that a case must be reversed because of this error. And the same jurisdiction which holds it to be error for a jury to use the evidence obtained by their eyes in determining whether land is swamp or otherwise, exhibits a criminal case where a view was had by the jury in the absence of the accused, and the case was reversed on the theory that he must be confronted by the witnesses and hear the evidence which is produced. If the view may furnish evidence in criminal cases, and the jury may use what they see in arriving at a verdict, as seems to be well established, why they should not be permitted to do the same thing where a piece of land or a ditch is involved, we cannot understand. We quite agree with the authorities that an instruction would be more aptly and better framed which should tell the jury that they are to use what they see as an aid to the understanding of the testimony, and unless the fact be an absolute physical one which is evident to the eye, and not dependent on any other considerations or any other proof, they must not use it as against the testimony offered and base their verdict on their own judgment of the situation other than the exact fact which they saw. We think it would be better for courts to thus limit the instruction respecting the view rather than to tell the jury that they may use the result of their observation as evidence in order to reach a verdict. In the latter case the jury would be inclined not only to use what they saw, but to draw on their own knowledge and experience in determining the other

matters which could only properly be the subject-matter of proof, and on which they must ultimately depend. For a review of the various cases and a satisfactory expression of the law on the subject, see 1 Thompson on Trials, chap. 27, title 3, art. 2.

All we insist on is that there is no such inherent vice in the instruction as to make it a reversible error, when as in this case, there is abundant evidence outside of the view to sustain the verdict, and we are unable to see that by the instruction the plaintiff in error was necessarily harmed. We think in a case of this description that if it was error to give the instruction, it was error without prejudice and not necessarily fatal to the judgment. To put it in apt shape, the verdict can be sustained on what is contained in the record. As a trial court or as an appellate tribunal, we could neither grant a new trial nor reverse the judgment because the verdict was unsupported by the evidence. We are clearly of the opinion that on the proof, plaintiff was entitled to recover, and even though this instruction may be subject perhaps to some criticism in the light of some authorities, and while we should have framed it differently had we been asked to give one on the subject, we are wholly unable to see that by it the plaintiff in error was harmed, and we should on this ground refuse to reverse the judgment.

But there is another basis on which our opinion can be successfully predicated. We do not believe the plaintiff in error saved an exception which is available to him on this hearing. The railroad company asked several instructions which were refused, but no argument is based on the error assigned respecting the court's ruling thereon. The court gave five instructions. After they were announced, the defendant company simply said "the defendant excepts to numbers 1, 2, 3, 4 and 5 of the instructions." Gave no reason, assigned no objection, called the court's attention to no element of the instruction which was erroneous, asked no modification of any of them, and presented no instruction on the subject. The neglect of the company to take advantage of the error if

there was one, either by a definite or even a general objection, or to assign any ground for the exception, and the failure to make an objection which would in any manner call the court's attention to the error if one had been committed, made the exception unavailable under late decisions in the appellate courts of the state. The matter has been so thoroughly considered and been so often reiterated, the reasons for the rule so clearly and plainly stated, that we need only to announce it and cite the decisions without a further expression of the basis on which the rule is predicated. *Wray v. Carpenter*, 16 Colo. 271; *Edwards v. Smith*, 16 Colo. 529; *Holman v. The Boston Land & Security Co.*, 8 Colo. App. 282; *Willard v. Williams*, 50 Pac. Rep. 207.

No error affecting the substantial rights of the parties, and by which they were prejudiced occurred during the progress of the trial, the verdict is supported by the testimony, and the judgment entered thereon will therefore be affirmed.

*Affirmed.*